**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-1644**

OSCAR ALBERTO ROBLES TENORIO,

              Petitioner,

         v.

ERIC H. HOLDER, JR., Attorney General,

              Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: March 23, 2011              Decided: August 26, 2011

Before GREGORY, AGEE, and KEENAN, Circuit Judges.

Affirmed by unpublished opinion. Judge Gregory wrote the opinion, in which Judge Agee and Judge Keenan concurred.

**ARGUED:** Ofelia Calderón, Xavier F. Racine, MARKS, CALDERÓN, DERWIN & RACINE, PLC, Arlington, Virginia, for Petitioner. Woei-Tyng Daniel Shieh, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Tony West, Assistant Attorney General, Civil Division, Francis W. Fraser, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Robles challenges his denial of Lawful Permanent Resident (LPR) status under the Child Status Protection Act. Because Robles first petitioned for LPR status when he was twenty-eight (28) years old, and because he was not associated with any previous "original" petition or priority date, we affirm.

I.

Oscar Alberto Robles-Tenorio was born in El Salvador on May 11, 1977. At an unknown date years later, his father, Oscar Alberto Robles, was approved for an I-140 petition to adjust his immigration status to LPR. That application, which was sponsored by the father's employer, was assigned a priority date of July 7, 1997. At that time, Robles was twenty (20) years old and residing in El Salvador. On February 28, 2001, Robles' father adjusted his status to become an LPR. At that time, Robles was twenty-four (24) years old and still residing in El Salvador.

On May 4, 2005, at the age of twenty-seven (27), Robles entered the United States without inspection in Texas but was apprehended by Customs and Border Patrol agents and issued a Notice to Appear for the next day. On August 9, 2005, Robles' father filed an I-130 petition for his son on the grounds that Robles was the unmarried child of an LPR. Robles was twenty-

2

eight (28) years old when this petition was filed. Before the Immigration Judge (IJ), Robles conceded removability, but sought to adjust derivatively his status given his father's LPR, using the Child Status Protection Act (CSPA). Specifically, Robles invoked subsections 1153(h)(3) and 1255(i) of the Immigration and Nationality Act (INA). 8 U.S.C. §§ 1153(h)(3), 1255(i).

On September 20, 2007, the IJ denied Robles' application for LPR, reasoning that Robles was not protected under the CSPA because he did not apply within one year of his father's new status becoming available -- and because Robles was not physically present in the United States by the year 2000. Robles appealed to the Board of Immigration Appeals (BIA), which dismissed his claim on April 10, 2009. The BIA agreed with the IJ's reasoning about the one year time bar, but did not address the issue of whether Robles was exempt from the physical presence requirement of section 1255(i).

Robles then petitioned this Court for review, and we initially remanded for reconsideration in light of Matter of Wang, 25 I. & N. Dec. 28 (BIA 2009), per the parties' agreement. Wang addressed the meaning of section 1153(h) and the operation of its one year time requirement. In 2010, the BIA affirmed its prior ruling once more and Robles petitioned our Court again.

3

We "review the BIA's legal conclusions de novo," and "'we afford substantial — but not unlimited — deference to the Board's decision.'" Crespin-Valladares v. Holder, 632 F.3d 117, 124 (4th Cir. 2011) (citations omitted).

Under the Immigration and Nationality Act, an LPR can petition to obtain a visa for an alien relative by filing an I-130 petition. Once the petition is approved, it contains a preference category and a priority date: "The 'preference category' corresponds to the familial relationship between the alien and the person filing the I-130 form. The priority date is the date on which the approved I-130 petition was filed . . . ." Drax v. Reno, 338 F.3d 98, 114 (2d Cir. 2003) (citations omitted). "Within the preference categories, immigrant visas are issued on a first-come-first-served basis. An alien's place in line is determined by his or her 'priority date[]' . . . ." Kooritzky v. Reich, 17 F.3d 1509, 1511 (D.C. Cir. 1994).

Children and spouses are covered by the second preference category and subject to certain conditions and numerical limits. 8 U.S.C. § 1153(a)(2). Namely, these offspring must be considered "children" in order to be protected by these

4

immigration provisions.[1]  Generally, "[t]he term 'child' means an unmarried person under twenty-one [21] years of age . . . ."  8 U.S.C. § 1101(b)(1)(A).  But the CSPA amended the law, so that certain offspring who are over twenty-one (21) years old are still treated as "children."  The relevant provision reads a follows:

> (1) In general.  For purposes of subsections (a)(2)(A) [offspring of LPR] and (d) [offspring not otherwise covered], a determination of whether an alien satisfies the age requirement in the matter preceding subparagraph (A) of section 101(b)(1) [is under twenty-one] shall be made using--
>
>> (A) the age of the alien on the date on which an immigrant visa number becomes available for such alien (or, in the case of subsection (d), the date on which an immigrant visa number became available for the alien's parent), but only if the alien has sought to acquire the status of an alien lawfully admitted for permanent residence [LPR status] within one year of such availability; reduced by
>>
>> (B) the number of days in the period during which the applicable petition described in paragraph (2) was pending.

---

[1]  We employ the term "offspring" since it describes the familial relationship without connoting an immigrant's factual or legal age.  We find this more accurate than the term "child" and less vague than "alien," which the CSPA uses somewhat interchangeably.

Offspring who are under twenty-one (21) years old and not otherwise covered by that second preference category or other bases for immigration are still "entitled to the same status, and the same order of consideration provided in the respective subsection, if accompanying or following to join, [as] the spouse or parent."  8 U.S.C. § 1153(d).

(2) Petitions described. The petition described in this paragraph is--

    (A) with respect to a relationship described in subsection (a)(2)(A), a petition filed under section 204 [8 U.S.C. § 1154] for classification of an alien child under subsection (a)(2)(A); or

    (B) with respect to an alien child who is a derivative beneficiary under subsection (d), a petition filed under section 204 [8 U.S.C. § 1154] for classification of the alien's parent under subsection (a), (b), or (c).

(3) Retention of priority date. If the age of an alien is determined under paragraph (1) to be <u>21 years of age or older</u> for the purposes of subsections (a)(2)(A) [offspring of LPR] and (d) [offspring not otherwise covered], the alien's petition shall <u>automatically be converted</u> to the appropriate category and the alien <u>shall retain</u> the <u>original priority date</u> issued upon receipt of the <u>original petition</u>.

(4) Application to self-petitions. Paragraphs (1) through (3) shall apply to self-petitioners and derivatives of self-petitioners.

8 U.S.C. § 1153(h) (emphasis added).

Robles argues that he should "automatically be converted" to his father's LPR status under 1153(h)(3). Namely, he contends that subsections 1153(h)(1) and 1153(h)(3) should be read "separate[ly]" since they are not meaningfully "incorporate[d]," and concludes that the one year time requirement in (h)(1) does not apply to him. App. Br. at 10, 16. Robles relies primarily on an older, unpublished case, <u>Matter of Garcia</u>, 2006 WL 2183654 (BIA 2006) (unpublished), and

6

argues that the subsequent case of Wang was wrongly decided and unreasonable. Finally, Robles acknowledges that there is no legislative history pertaining specifically to subsection 1153(h)(3), but notes that the CSPA's general purpose was to help "aliens, who through no fault of their own, lose the opportunity to obtain [a] . . . visa." H.R. Rep. No. 107-45, at 2 (2001), reprinted in 2002 U.S.C.C.A.N. 640, 641.

The Government contends that the BIA rightly denied Robles LPR status because he did not apply for a status change within one year of the date his father's visa became available. Specifically, the Government claims that "[t]hough th[e] date [Robles' father's visa became available] is undetermined, it is earlier than the December 6, 2001 date [on which] Robles[]' father adjusted his status that was used by the agency, and which still rendered Robles[]' application over 2 years late." Gov. Br. at 18-19. The Government points to the logic of Wang, and argues that even if subsection 1153(h)(3) is ambiguous, the BIA's interpretation is still reasonable and valid under Chevron U.S.A. Inc. v. NRDC, Inc., 467 U.S. 837 (1984).

Section 1153(h) is far from a model of clarity.[2] It is unclear whether the text and structure of (h)(1) and (h)(3) can be reconciled in any coherent or reasonable fashion. Given this, we are particularly mindful of the "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien." Ins v. Cardoza-Fonseca, 480 U.S. 421, 449 (1987). Nonetheless, the Government urges us to broadly construe the statute so as to apply the one-year time requirement from (h)(1) to (h)(3) and to all alien offspring.

Thankfully, we need not reach such interpretive questions here, because it is clear that Robles falls outside of the plain terms of 1153(h)(3). Robles claims he should "automatically be converted" to his father's LPR status under subsection (h)(3). But the benefits of (h)(3) contain an important limitation: eligible offspring "shall retain the original priority date issued upon receipt of the original petition." 8 U.S.C. § 1153(h) (emphasis added). The plain meaning and premise of the CSPA is that parents originally apply on behalf of their

---

[2] The BIA itself acknowledged that "[u]nlike sections [1153](h)(1) and (2), which when read in tandem clearly define the universe of petitions that qualify for the 'delayed processing formula,' the language of section [1153](h)(3) does not expressly state which petitions qualify for automatic conversion and retention of priority dates." Wang 25 I. & N. Dec. 28 at 17.

offspring -- who can subsequently retain those benefits in certain circumstances. The use of the terms "original" and "retain" is dispositive. Indeed, offspring can hardly "retain" something they never "originally" had or were associated with in the first place.

The CSPA's implementing regulation confirms this straightforward reading of the plain text: "if the child reaches the age of twenty-one [21] prior to the issuance of a visa to the principal alien parent, a separate petition will be required [and] . . . the original priority date will be retained if the subsequent petition is filed by the same petitioner." 8 C.F.R. § 204.2(a)(4) (emphasis added). Similarly, the Ninth Circuit has interpreted the CSPA to protect offspring who were "under 21[] at the time a petition for permanent resident status was filed on their behalf." Ochoa-Amaya v. Gonzales, 479 F.3d 989, 992 (9th Cir. 2007) (emphasis added, citations omitted). See also David Weissbrodt & Laura Danielson, Immigration Law and Practice 164 (6th ed. 2011) ("The process of applying for family-sponsored immigration begins when the prospective immigrant's relative submits Form I-130.") (citations omitted).[3]

---

[3] The legislative history further supports this clear-cut interpretation. Namely, Congress aimed to determine whether an offspring constituted a "child" based on his or her "age as of the time an immigrant visa petition is filed on his or her behalf." 2002 U.S.C.C.A.N. at 641-42 (emphasis added). Robles'
(Continued)

9

In this case, Robles had neither an "original" petition to which he can reach back, nor an associated priority date which he can "retain." Rather, the first time Robles' father petitioned on his son's behalf was in August 2005, when Robles was twenty-eight (28) years old. Even if we treated that 2005 petition as Robles' "original" one, he could not have obtained a predated priority date then, since he was not legally or factually a child at that point. Consequently, Robles does not fall under the plain terms of subsection (h)(3) of the CSPA. While Robles was twenty (20) years old when his father obtained a 1997 priority date, the parties do not argue -- and nothing in the record suggests -- that Robles was originally associated with his father's employer-sponsored petition or that Robles applied for residency within one year of an immigrant visa number becoming available then.[4]

---

father did not petition on his son's behalf until his son was already twenty-eight (28) years old. By choosing to wait so long before petitioning, Robles is in a materially different situation from those children who, "through no fault of their own, lose the opportunity to obtain [a] . . . visa," while waiting for their applications to be processed. Id. at 641. Thus, Robles' unique circumstances are also outside the scope of Congress' core purpose.

[4] We cannot help but note that the CSPA is also unclear about what it means for an immigrant visa number to become "available for" an offspring under subsection 1153(h)(1)(A). But Robles does not argue that his father's initial employment-sponsored petition was meaningfully "available for" him or that
(Continued)

III.

Next, section 1255(i) requires offspring to be physically

present in the United States by the year 2000:

> [An alien] who, in the case of a beneficiary of a
> petition for classification, or an application for
> labor certification, described in subparagraph (B)
> that was filed after January 14, 1998, is physically
> present in the United States on the date of the
> enactment of the LIFE Act Amendments of 2000 [by
> December 21, 2000]; may apply to the Attorney General
> for the adjustment of his or her status to that of an
> alien lawfully admitted for permanent residence. . . .

8 U.S.C. § 1255(i)(1)(C) (emphasis added). But the implementing

regulation further specifies that:

> If the qualifying visa petition or application for
> labor certification was filed after January 14, 1998,
> the alien must have been physically present in the
> United States on December 21, 2000. This requirement
> does not apply with respect to a spouse or child
> accompanying or following to join a principal alien
> who is a grandfathered alien as described in this
> section.

8 C.F.R. § 1245.10(a)(1)(ii) (emphasis added).

Robles argues the BIA failed to address his eligibility for

LPR under section 1255(i) and that his derivative application is

not subject to physical presence requirements. While the

Government does not directly analyze this issue, the BIA found

_____

he could have been added retroactively to that petition.
Therefore, we need not resolve the issue at this time.

11

it need not reach this question because the IJ properly denied Robles' application for adjustment of status in the first place.

We agree with Robles that the IJ erroneously imposed a physical presence requirement -- since the regulation by its very terms does not apply to child applicants.  But as the BIA and Government rightly suggest, this error does not affect the outcome of the case.  Even if Robles had applied from abroad in August 2005, he still would have fallen outside the plain terms of subsection 1153(h)(3), since he was not associated with any original petition.

IV.

For these reasons, Robles' petition for review is denied and the BIA's 2010 decision is

AFFIRMED.

12