**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROSALINA CUELLAR DE OSORIO;
ELIZABETH MAGPANTAY; EVELYN Y.
SANTOS; MARIA ELOISA LIWAG;
NORMA UY; RUTH UY,
    *Plaintiffs-Appellants,*

     v.

ALEJANDRO MAYORKAS, Director,
United States Citzenship and
Immigration Services; JANET
NAPOLITANO, Secretary of the
Department of Homeland Security,
HILLARY RODHAM CLINTON,
Secretary of State,
     *Defendants-Appellees.*

No. 09-56786

D.C. No.
5:08-cv-00840-
JVS-SH

11811

TERESITA G. COSTELO; LORENZO P.
ONG, Individually and on Behalf
of all Others Similarly Situated,
                    *Plaintiffs-Appellants,*

                    v.

JANET NAPOLITANO, Secretary of
the Department of Homeland
Security; UNITED STATES
CITIZENSHIP AND IMMIGRATION
SERVICES; ALEJANDRO MAYORKAS,
Director, United States Citizenship
and Immigration Services; LYNNE
SKEIRIK, Director, National Visa
Center; CHRISTINA POULOS, Acting
Director, California Service
Center, United States Citizenship
and Immigration Services; HILLARY
RODHAM CLINTON, Secretary of
State,
                    *Defendants-Appellees.*

No. 09-56846

D.C. No.
8:08-cv-00688-
JVS-SH

OPINION

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted
June 19, 2012—Pasadena, California

Filed September 26, 2012

Before: Alex Kozinski, Chief Judge, Harry Pregerson,
M. Margaret McKeown, Kim McLane Wardlaw,
William A. Fletcher, Raymond C. Fisher, Ronald M. Gould,
Richard A. Paez, Johnnie B. Rawlinson, Milan D. Smith, Jr.,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Murguia;
Dissent by Judge M. Smith

## COUNSEL

Nancy Ellen Miller (argued), Reeves & Associates, APLC, Pasadena, California; Amy Prokop and Carl Shusterman

(argued), Law Offices of Carl M. Shusterman, Los Angeles, California, for plaintiff-appellant Rosalina Cuellar de Osorio.

Amy Prokop and Carl Shusterman, Law Offices of Carl M. Shusterman, Los Angeles, California, for plaintiffs-appellants Elizabeth Magpantay, Evelyn Y. Santos, Maria Eloisa Liwag, Norma Uy, and Ruth Uy.

Anthony James Favero and Robert L. Reeves, Reeves & Associates, APLC, Pasadena, California for plaintiffs-appellants Teresita G. Costelo and Lorenzo P. Ong.

Elizabeth J. Stevens, Gisela Ann Westwater (argued), and Aaron D. Nelson, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for the defendants-appellees.

Mary Kenney, American Immigration Council, Washington, D.C., for amici curiae American Immigration Council and American Immigration Lawyers Association.

Nickolas A. Kacprowski, Kirkland & Ellis LLP, San Francisco, California, for amici curiae American Immigration Council and National Immigrant Justice Center.

Deborah Susan Smith, Law Office of Deborah S. Smith, Helena, Montana, for amici curiae American Immigration Lawyers Association and Catholic Legal Immigration Network, Inc.

Thomas Kirk Ragland, Benach Ragland LLP, Washington, D.C., for amicus curiae Active Dreams LLC.

## OPINION

MURGUIA, Circuit Judge, with whom PREGERSON, WARDLAW, FISHER, GOULD and PAEZ, Circuit Judges, join in full:

Appellants became lawful permanent residents and immigrated to the United States. However, due to visa quotas and a serious backlog, by the time Appellants received their family-sponsored visas, their children were no longer eligible to accompany them as recipients of derivative visas, which are available only to children under the age of twenty-one. Their children had "aged out" of eligibility.

The question before us is whether these children are entitled to relief under the Child Status Protection Act ("CSPA"), 8 U.S.C. § 1153(h). The CSPA provides, among other things, that when certain aged-out aliens apply for visas under a new category for adults, they may retain the filing date of the visa petition for which they were listed as derivative beneficiaries when they were children. This ensures that visas are available quickly, rather than requiring the now-adult aliens to wait many more years in a new visa line.

The United States Citizen and Immigration Services ("USCIS") denied Appellants' requests for priority date retention under the CSPA. USCIS relied on the Board of Immigration Appeals' ("BIA") decision in *Matter of Wang,* 25 I. & N. Dec. 28 (BIA 2009) that the CSPA does not apply to all derivative beneficiaries. The district court, deferring to the BIA's interpretation, granted summary judgment to USCIS in two separate cases. We reverse.

We conclude that the plain language of the CSPA unambiguously grants automatic conversion and priority date retention to aged-out derivative beneficiaries. The BIA's interpretation of the statute conflicts with the plain language of the CSPA, and it is not entitled to deference.

## I.  Family-based immigration overview

We begin with an overview of family-based immigration. Family-sponsored immigration allows U.S. citizens and lawful permanent residents ("LPRs") to file visa petitions on behalf of certain qualifying alien relatives. The Immigration and Nationality Act ("INA") limits the total number of family-sponsored immigrant visas issued each year to 480,000, and directs that natives of any single foreign state may not receive more than seven percent of these visas. 8 U.S.C. §§ 1151(c), 1152(a)(2). The INA also establishes preference categories based on the relationship between citizens or LPRs and their alien relatives, and limits the number of family-sponsored immigrant visas that can be granted to members of each preference category. *Id.* § 1153(a). Unlike other types of family-sponsored visa applicants, children, spouses, and parents (i.e. "immediate relatives") of U.S. citizens are not subject to the annual visa limits. *Id.* § 1151(b)(2)(A)(i).

For non-immediate relatives of citizens, the INA establishes the following family visa preference categories:

F1: Unmarried sons and daughters of U.S. citizens

F2A: Spouses and children of LPRs

F2B: Unmarried sons and daughters of LPRs

F3: Married sons and married daughters of U.S. citizens

F4: Brothers and sisters of U.S. citizens

*Id.* § 1153(a).

After a U.S. citizen or LPR files a visa petition on behalf of a relative, USCIS determines if a qualifying relationship

exists between the citizen or LPR petitioner and the alien relative who is the primary beneficiary. If so, USCIS puts the beneficiary "in line" in the appropriate visa category. The beneficiary's place in line is determined by the date the petition is filed, which is known as the "priority date." Due to statutory limits for each visa category and a substantial backlog, it may be many years before a petition's priority date becomes "current," meaning that a visa is available for the beneficiary named in the petition. *See, e.g.*, U.S. Dep't of State, Visa Bulletin, August 2012, *available at* http://www.travel.state.gov/visa/bulletin/bulletin_5749.html (showing delays for members of all visa categories, including waits of over 10 years for nationals of several countries in certain categories).

A petition can also include the spouse or children of the primary beneficiary. The primary beneficiary's spouse or children may then receive derivative visas at the same time that the primary beneficiary receives a visa. 8 U.S.C. § 1153(d) ("A spouse or child . . . shall . . . be entitled to the same status, and the same order of consideration provided in the respective subsection, if accompanying or following to join, the spouse or parent."). The INA defines a "child" as an unmarried person under the age of twenty-one. 8 U.S.C. § 1101(b)(1). The primary beneficiary's son or daughter can only receive a derivative visa if he or she is under twenty-one when the parent's priority date becomes current. Often children who qualify for derivative visas at the time a petition is filed on their parent's behalf are over the age of twenty-one by the time their parent receives the visa, and therefore may not immigrate to the United States with their parent. This is referred to as "aging out" of visa eligibility. Aging out also affects children who are the primary beneficiaries of F2A petitions, as they are no longer eligible for an F2A visa (for spouses and children of LPRs) once they turn twenty-one. Because some delays are many years long, children may age out even if they were very young when a petition was filed on their parent's behalf.

## II.  The Child Status Protection Act

In 2002, Congress passed the Child Status Protection Act ("CSPA"). Pub. L. No. 107-208, 116 Stat. 927 (2002). This appeal concerns a provision of the CSPA entitled "Rules for determining whether certain aliens are children," codified at 8 U.S.C. § 1153(h).[1] Subsection (h) addresses two sources of

---

[1]The CSPA states in relevant part:

(h) Rules for determining whether certain aliens are children

(1) In general

For purposes of subsections (a)(2)(A) and (d) of this section, a determination of whether an alien satisfies the age requirement in the matter preceding subparagraph (A) of section 1101(b)(1) of this title shall be made using—

(A) the age of the alien on the date on which an immigrant visa number becomes available for such alien (or, in the case of subsection (d) of this section, the date on which an immigrant visa number became available for the alien's parent), but only if the alien has sought to acquire the status of an alien lawfully admitted for permanent residence within one year of such availability; reduced by

(B) the number of days in the period during which the applicable petition described in paragraph (2) was pending.

(2) Petitions described

The petition described in this paragraph is—

(A) with respect to a relationship described in subsection (a)(2)(A) of this section, a petition filed under section 1154 of this title for classification of an alien child under subsection (a)(2)(A) of this section; or

(B) with respect to an alien child who is a derivative beneficiary under subsection (d) of this section, a petition filed under section 1154 of this title for classification of the alien's parent under subsection (a), (b), or (c) of this section.

(3) Retention of priority date

If the age of an alien is determined under paragraph (1) to be 21 years of age or older for the purposes of subsections (a)(2)(A)

delay that can cause a beneficiary to age out of child status: (1) USCIS processing delays and (2) the wait times between USCIS's approval of a visa petition and when a visa becomes available. Three parts of subsection (h) are relevant to our discussion.

The first paragraph of subsection (h) addresses the more minor delay that occurs while USCIS processes a visa application. 8 U.S.C. § 1153(h)(1). Subsection (h)(1) establishes the method to determine an alien's age "[f]or purposes of subsections (a)(2)(A) and (d) [of § 1153]," which respectively address F2A visas (for the children of LPRs), *id.* § 1153(a)(2)(A), and derivative visas (for the children of primary beneficiaries), *id.* § 1153(d). Subsection (h)(1) provides that for purposes of determining if a visa applicant qualifies as a child, the alien's "age" is his age on the date the visa becomes available minus "the number of days in the period during which the applicable petition" was pending after being filed. *Id.* § 1153(h)(1). Subsection (h)(1) thus ensures that an alien does not lose "child" status due to administrative delays in the processing of his parent's visa petition.

Subsection (h)(2) defines the kinds of visa petitions to which the age-reduction formula in subsection (h)(1) applies. *Id.* § 1153(h)(2). Subsection (h)(2)(A) identifies F2A petitions, which are for children of LPRs. *Id.* § 1153(h)(2)(A). Subsection (h)(2)(B) identifies all other categories of visas for which a child may be a derivative beneficiary (family,

---

and (d) of this section, the alien's petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition.

(4) Application to self-petitions

Paragraphs (1) through (3) shall apply to self-petitioners and derivatives of self-petitioners.

employment, and diversity-based visa petitions). *Id.*
§ 1153(h)(2)(B).

Subsection (h)(3), the provision at issue in this appeal,
grants alternative relief to aliens who are still determined to
be twenty-one or older after calculating their age pursuant to
the age reduction formula in subsection (h)(1). It states: "If
the age of an alien is determined under [subsection (h)(1)] to
be 21 years of age or older for the purposes of subsections
(a)(2)(A) [children of LPRs] and (d) [derivative beneficia-
ries], the alien's petition shall automatically be converted to
the appropriate category and the alien shall retain the original
priority date issued upon receipt of the original petition." *Id.*
§ 1153(h)(3). In other words, subsection (h)(3) requires that
when aliens age out of child status for purposes of their origi-
nal petition, their applications be automatically converted to
the new appropriate category for adults. Additionally, it
enables such aliens to retain the priority date assigned to their
original petition. The effect of this older priority date is that
the beneficiary is placed at or near the front of the visa line,
and a visa would likely be available immediately or soon.
Without this automatic conversion and priority date retention,
the alien will have to go to the back of the line for the new
category, and might wait many more years for a visa.

The question presented in this appeal is whether the auto-
matic conversion and date retention benefits provided by sub-
section (h)(3) apply only to aged-out F2A petition
beneficiaries, or whether they also apply to derivative benefi-
ciaries of the other family visa categories.

## III. *Matter of Wang*

The BIA answered this question in *Matter of Wang*, 25 I.
& N. Dec. 28 (2009). The BIA held that unlike subsections
(h)(1) and (h)(2), "which when read in tandem clearly define
the universe of petitions that qualify for the 'delayed process-
ing formula,' the language of [subsection (h)(3)] does not

expressly state which petitions qualify for automatic conversion and retention of priority dates." *Id.* at 33. Based on this observation alone, the BIA found the statute ambiguous and turned to the Department of Homeland Security's past regulatory practice and the CSPA's legislative history. *Id.*

The BIA noted that "the phrase 'automatic conversion' has a recognized meaning" in immigration regulations. *Id.* at 34. According to the BIA, the term "conversion" has consistently meant that a visa petition converts from one visa category to another without the need to file a new petition, and priority date retention has always applied only to subsequent visa petitions filed by the same petitioner. *Id.* at 34-35. The BIA offered several examples. Under 8 C.F.R. § 204.2(i)(3), if an LPR petitioner becomes a citizen, his adult son or daughter's visa petition automatically converts from an F2B petition (for adult sons and daughters of LPRs) to an F1 petition (for adult sons and daughters of citizens), and retains its original priority date. In this case, the identity of the petitioner remains the same. Additionally, 8 C.F.R. § 204.2(a)(4) allows an aged-out derivative beneficiary of an F2A spousal petition to retain his priority date as long as the original petitioner (his parent) submits an F2B visa petition on his behalf. Again, the petitioner remains the same. *Wang*, 25 I. & N. Dec. at 35. The BIA assumed that when Congress enacted subsection (h)(3), it understood past usage of these regulatory terms. *Id.*

The BIA also surveyed the legislative history of the CSPA and concluded that "there is no indication in the statutory language or legislative history of the CSPA that Congress intended to create a mechanism to avoid the natural consequence of a child aging out of a visa category because of the length of the visa line." *Id.* at 38. Finding no indication that Congress attempted to "expand on the historical application of automatic conversion and retention of priority dates for visa petitions," the BIA declined "to read such an expansion into the statute." *Id.*

Under the BIA's interpretation of subsection (h)(3), only subsequent visa petitions that do not require a change of petitioner may convert automatically to a new category and retain the original petition's priority date. Automatic conversion and priority date retention would thus be only available to F2A petition beneficiaries, including primary child beneficiaries and derivative beneficiaries of F2A spousal petitions. This is because these aged-out beneficiaries may become primary beneficiaries of an F2B petition filed by the same petitioner.

## IV. Factual background

Appellants' cases illustrate the question before us. Rosalina Cuellar de Osorio's citizen mother filed a petition for an F3 visa (for a married daughter of a citizen) on her behalf in May 1998. Cuellar de Osorio's son, who was then thirteen, was listed on the petition as a derivative beneficiary. Cuellar de Osorio's visa was approved in June 1998, but her priority date did not become current until November 2005. By then, her son was twenty-one and as a result was ineligible for a derivative visa. Cuellar de Osorio became an LPR and immigrated to the United States in August 2006. In July 2007, Cuellar de Osorio filed an F2B petition for her son, now the adult son of an LPR, and requested that he retain the May 1998 priority date of her original F3 petition in which he had been named a derivative beneficiary. USCIS did not grant priority date retention, so Cuellar de Osorio's son was placed in the back of the F2B line, requiring him to wait several more years for a visa. Cuellar de Osorio and several other similarly situated petitioners sued USCIS. Deferring to the BIA's decision in *Matter of Wang*, under which the plaintiffs were not entitled to automatic conversion and priority date retention, the district court granted summary judgment to USCIS.

Teresita Costelo was the beneficiary of an F3 visa petition filed by her citizen mother in January 1990. Costelo's two daughters, then aged ten and thirteen, were listed as derivative beneficiaries. By the time Costelo received her visa in 2004,

both daughters were over twenty-one. Costelo immigrated and became an LPR, filed F2B petitions for her daughters, and requested retention of the 1990 priority date of the prior F3 visa petition.

Lorenzo Ong's citizen sister filed an F4 petition on his behalf in 1981. At the time, Ong's daughters were ages two and four. By the time Ong's priority date became current in 2002, his daughters had aged out of derivative visa eligibility. Ong became an LPR and, in March 2005, he filed F2B petitions on behalf of his adult daughters and later requested retention of the 1981 priority date. USCIS did not respond to the priority date request. Costelo and Ong sued. The district court certified a class and granted the Government's motion for summary judgment, again deferring to *Matter of Wang*.

## V.   Second and Fifth Circuit decisions

Since the BIA decided *Matter of Wang*, two of our sister circuits have considered subsection (h)(3). Though the Second and Fifth Circuits reached different conclusions as to the scope of subsection (h)(3)'s applicability, neither found the language of the CSPA ambiguous and therefore neither deferred to *Matter of Wang*. *See Khalid v. Holder*, 655 F.3d 363 (5th Cir. 2011); *Li v. Renaud*, 654 F.3d 376 (2d Cir. 2011).

The Fifth Circuit concluded that the unambiguous language of the CSPA extends automatic conversion and priority date retention to both F2A beneficiaries and aged-out derivative beneficiaries of other family-sponsored petitions. *Khalid*, 655 F.3d at 374-75. The Fifth Circuit held that because subsection (h)(2) explicitly encompasses both F2A visas and all derivative visas, and subsections (h)(1), (h)(2), and (h)(3) are interdependent, "the statute, as a whole, clearly expresses Congress' intention about the universe of petitions covered by (h)(3)," and "there is no room for the agency to impose its own answer to the question." *Id.* at 371 (internal quotation

marks omitted). The Fifth Circuit thus declined to defer to the BIA's interpretation of subsection (h)(3), instead holding that automatic conversion is available for derivative beneficiaries of all family petitions, even when this necessitates a change in the identity of the petitioner.

In contrast, the Second Circuit held that an aged-out derivative beneficiary of an F2B petition was not entitled to automatic conversion and priority date retention when his mother filed an F2B petition that named him as a primary beneficiary. *Li,* 654 F.3d at 383. The Second Circuit concluded that the appellant's petition could not be automatically converted because "the phrase conversion to an appropriate category refers to a petition in which the category is changed, but not the petitioner." *Id.* at 384. According to the Second Circuit, a change in the petitioner forecloses the possibility of automatic conversion.

## VI.   Standard of Review

We review de novo a district court's grant of summary judgment. *Herrera v. U.S. Citizenship & Immigration Servs.,* 571 F.3d 881, 885 (9th Cir. 2009). We review the BIA's precedential decision interpreting a governing statute according to the principles of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999). Pursuant to the *Chevron* two-step analysis, we first ask if the statute is unambiguous as to the question at issue. *Chevron*, 467 U.S. at 842-43. If it is, that is the end of our inquiry. *Id.* Only if the statute is ambiguous do we proceed to step two and ask "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

## VII.   Discussion

We begin by determining whether the CSPA is unambiguous as to whether the priority date retention and automatic

conversion benefits in subsection (h)(3) extend to aged-out derivative beneficiaries of all family visa petitions. To determine if Congress has spoken unambiguously, we begin with the plain language of the statute itself. *N. Cal. River Watch v. Wilcox*, 633 F.3d 766, 772-73 (9th Cir. 2010).

**[1]** Subsection (h)(3) states: "Retention of priority date. If the age of an alien is determined under paragraph (1) to be 21 years of age or older for the purposes of subsections (a)(2)(A) and (d) of this section, the alien's petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition." 8 U.S.C. § 1153(h)(3).

**[2]** The Government argues that the language of subsection (h)(3) is ambiguous because, as the BIA held, it does not specify the petitions that qualify for automatic conversion and retention of priority dates. *See Wang*, 25 I. & N. Dec. at 33 (subsection (h)(3) "does not expressly state which petitions qualify for automatic conversion and retention of priority dates"). The Government is correct that subsection (h)(3) itself does not identify the kinds of visa petitions to which it applies, through either its own terms or by explicit reference to another definitional section. In contrast, subsection (h)(1), which establishes the age-reduction formula, states that it applies to the categories of visas named in subsection (h)(2). 8 U.S.C. § 1153(h)(1). In turn, subsection (h)(2) identifies both F2A beneficiaries (children of LPRs) and child derivative beneficiaries of all other visa categories. *Id.* § 1153(h)(2).

**[3]** However, we do not assess subsection (h)(3) in a vacuum, but rather consider the text in its statutory context. *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 132 (2000). The effect of subsection (h)(3) is explicitly contingent upon the operation of subsection (h)(1). The first words of subsection (h)(3) read "[i]f the age of an alien is determined under [subsection (h)(1)] to be 21 years of age or older," then the alien's petition will be automatically converted to the

appropriate category and he will retain the original priority date. 8 U.S.C. § 1153(h)(3). By subsection (h)(3)'s own terms, then, an alien is entitled to automatic conversion and priority date retention under subsection (h)(3) only if he is determined to be over twenty-one after applying the reduction calculation in subsection (h)(1). *Id.*; *see also Khalid*, 655 F.3d at 370 ("The benefits of automatic conversion and priority date retention are explicitly conditioned on a particular outcome from the formula in (h)(1) . . . .").

**[4]** Subsection (h)(3) thus cannot function independently; it is triggered only when an application of subsection (h)(1)'s subtraction formula determines that the alien is over twenty-one. In turn, subsection (h)(1) explicitly applies to the visas described in subsection (h)(2), which include both F2A visas and derivatives of the other visa categories. Therefore, both aged-out F2A beneficiaries and aged-out derivative visa beneficiaries may automatically convert to a new appropriate category (if one is available), and the visa applicants may retain the priority date of the original petitions for which they were named beneficiaries. The plain language of the statute thus conclusively resolves the question before us.

Our interpretation is further bolstered by Congress's use of the identical phrase "for [the] purposes of subsections (a)(2)(A) and (d)" in both subsections (h)(1) and (h)(3). This phrase refers to both F2A petitions for children (established by 8 U.S.C. § 1153(a)(2)(A)) and derivative visas for the children of primary beneficiaries of all visa categories (established by 8 U.S.C. § 1153(d)). It is undisputed that subsection (h)(1) applies to all derivative beneficiaries, and to accord a different meaning to the phrase as used in subsection (h)(3) violates the "presumption that a given term is used to mean the same thing throughout a statute." *Brown v. Gardner*, 513 U.S. 115, 118 (1994). We therefore read Congress's repeated references to "subsections (a)(2)(A) and (d)" as expressions of its intent to extend automatic conversion and priority date retention to all family-sponsored derivative beneficiaries.

The existence of a circuit split does not itself establish ambiguity in the text of the CSPA. *See, e.g., Roberts v. Sea-Land Servs., Inc.*, 132 S. Ct. 1350 (2012) (holding that § 906(c) of the Longshore and Harbor Workers' Compensation Act is unambiguous notwithstanding disagreement between the Fifth, Ninth, and Eleventh Circuits about its meaning); *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012) (holding that the term "individual" as used in the Torture Victim Protection Act unambiguously encompasses only natural persons despite disagreement among several Circuits); *see also Reno v. Koray*, 515 U.S. 50, 64-65 (1995) ("A statute is not 'ambiguous for purposes of lenity merely because' there is 'a division of judicial authority' over its proper construction." (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). Like the Fifth Circuit, we recognize that the Second Circuit concluded that a petition cannot be automatically converted where a change in petitioner is required, and we respectfully disagree. *See Khalid*, 655 F.3d at 373 (citing *Li*, 654 F.3d at 383). The Second Circuit's decision not to consider the interrelatedness of sections (h)(1), (h)(2) and (h)(3) does not undermine our conclusion that the statute, read as a whole, unambiguously answers the question before us.

The Government also contends the CSPA becomes ambiguous when its terms are applied to certain derivative beneficiaries. According to the Government, automatic conversion and priority date retention cannot be practicably applied to F3 and F4 derivative beneficiaries because, for a category conversion to be automatic, it must involve the same petition and the same petitioner. Under this definition, automatic conversion would not be possible for aged-out derivative beneficiaries of F3 and F4 petitions because there is no qualifying relationship between the original visa petitioner and the aged-out beneficiary.

For an aged-out derivative beneficiary of an F3 or F4 petition, a subsequent petition will require a new petitioner. In the case of an F3 petition, the derivative beneficiary's adult par-

ent is the primary beneficiary, and the derivative beneficiary's U.S. citizen grandparent is the petitioner. Once the derivative beneficiary turns twenty-one, he has no qualifying relationship with the original petitioner because a U.S. citizen cannot petition on behalf of his adult grandchild. For an F4 petition, the petitioner is a U.S. citizen, the primary beneficiary is the brother or sister of the citizen, and the derivative beneficiary is the child of the primary beneficiary and the niece or nephew of the petitioner. After the derivative beneficiary turns twenty-one, there is no qualifying relationship between a citizen uncle and his adult nephew. When the parents of aged-out derivative beneficiaries of F3 or F4 petitioners receive their visas and attain LPR status, they can file F2B petitions naming their now-adult sons and daughters as primary beneficiaries. In these F2B petitions, the identity of the petitioner changes from the beneficiary's grandparent or aunt or uncle to his or her parent.[2]

[5] The plain language of a statute controls except when "its application leads to unreasonable or impracticable results." *Valladolid v. Pac. Operations Offshore, LLP*, 604 F.3d 1126, 1133 (9th Cir. 2010) (internal quotation marks omitted). The language of the CSPA contains no indication that Congress intended the identity of the petitioner to be rele-

---

[2]For example, U.S. citizen Adele files an F3 petition on behalf of her adult son Aron, and includes Aron's daughter Naira as a derivative beneficiary. By the time Aron receives a visa, Naira is over twenty-one. Adele can no longer petition on Naira's behalf, as there is no qualifying relationship between a grandmother and her adult granddaughter. Once Aron becomes an LPR, Aron may file an F2B petition for his daughter Naira.

Similarly, U.S. citizen Adele files an F4 petition for her sister Kristen, and includes Kristen's daughter Sandy as a derivative beneficiary. If Sandy is over twenty-one when Kristen receives her visa, Adele cannot petition for Sandy, because Adele cannot petition for her adult niece. Kristen may file an F2B petition for her daughter Sandy.

The question here is whether the original F3 or F4 petition should be automatically converted to an F2B petition, and if the F2B petition retains the priority date of the F3 or F4 petition.

vant. We do not find the fact that an automatically-converted visa petition may entail a new petitioner to be the kind of "rare and exceptional circumstance[ ]" that renders the plain meaning of a statute impracticable. *Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991) ("When we find the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances."). Plainly, a change in policy announced by the statute's plain language cannot be impracticable just because it is a change or because it does not specify how exactly that change is to be implemented. *Id.* A statute that requires an agency to change its existing practices does not necessarily "lead to absurd or impracticable consequences." *Seattle-First Nat'l Bank v. Conaway*, 98 F.3d 1195, 1197 (9th Cir. 1996) (internal quotation marks omitted). We have no doubt that USCIS can develop a process for the F3 and F4 petitions of aged-out derivative beneficiaries to be automatically converted to F2B petitions, with new petitioners and new beneficiaries. The plain meaning of the CSPA controls.

In fact, the CSPA drafters seem to have contemplated that automatic conversion could require more than just a change in visa category. Subsection (h)(3) states that an alien's petition is automatically converted and retains the date of the "original petition." 8 U.S.C. § 1153(h)(3). This reference to an "original petition" suggests the possibility of a new petition, obtained either by editing the original petition or "automatically" requesting a new petition that identifies a new petitioner and primary beneficiary.[3]

---

[3]The "original petition" clause also contradicts the dissent's assertion that § 1153(h)(3) is ambiguous because an F2B petition for an aged-out F3 or F4 derivative beneficiary could entail a new petition and petitioner. Dissent at 11837-38. The CSPA provides that a petition is to be automatically converted and is to "retain the original priority date issued upon receipt of the original petition." 8 U.S.C. § 1153(h)(3). Therefore, notwithstanding the use of the word "conversion" in other parts of the INA, the CSPA expressly recognizes the possibility of automatic conversion of a subsequent petition. A new petition is not a "problem" in the plain meaning of the statute that renders the language ambiguous. *See* Dissent at 11839.

Any alleged impracticability is further undermined by the reality that when an F2A petition is converted to an F2B petition for an aged-out beneficiary — the kind of change to which all parties agree subsection (h)(3) applies — USCIS must take some action to effectuate the change. And where a derivative beneficiary of an F2A petition ages out and requires a new F2B petition naming him as the primary beneficiary, the agency must change both the visa category and the identity of the primary beneficiary. These changes, which USCIS is apparently capable of handling, do not seem significantly less onerous or complicated than a visa conversion which entails a new petitioner.

**[6]** We are also not convinced that any delay between the date a visa becomes available to the parent of an aged-out derivative beneficiary and the time when the parent obtains LPR status and can file an F2B petition renders automatic conversion impracticable. Until the parent of the aged-out son or daughter becomes an LPR, there is no category to which a petition for the son or daughter can immediately convert.[4] It is also true that if the parent's visa is ultimately denied, there will be no category to which his aged-out son or daughter can convert. The lag time while a parent receives his visa and adjusts status, or the possibility that conversion for an aged-out derivative is never possible, present administrative complexities that may inform USCIS's implementation of the CSPA. But these unresolved procedural questions do not create ambiguity in the text or result in a visa system " 'so bizarre that Congress could not have intended' it." *Dep't of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332, 347 (1994) (quoting *Demarest*, 498 U.S. at 191). Therefore, the plain lan-

---

[4]For a derivative beneficiary, the benefits of § 1153(h) are triggered on "the date on which an immigrant visa number became available for the alien's parent." 8 U.S.C. § 1153(h)(1)(A). Some time will elapse between the date a visa is available to the parent and the date the visa is approved (entitling the parent may file an F2B petition for the adult son or daughter).

guage of the CSPA is not impracticable. It is the agency's task to resolve these complications, not the court's.

Moreover, the Government's restrictive interpretation of subsection (h)(3) barely modifies the regulatory regime that existed at the time the CSPA was enacted. According to the Government, the CSPA makes priority date retention and automatic conversion available only to primary and derivative beneficiaries of F2A petitions. However, under 8 C.F.R. § 204.2(a)(4), which pre-dated the CSPA, an LPR is entitled to file an F2B petition on behalf of an aged-out son or daughter and retain the original priority date from the LPR's original F2A petition. For such aliens, the only benefit of the CSPA over the current regulatory rule under the Government's reading is automatic conversion, as the regulation requires that the LPR parent file a new F2B petition on behalf of his or her son or daughter to qualify for priority date retention. Thus, under the Government's interpretation, subsection (h)(3)'s only effects are to extend automatic conversion and priority date retention to aged-out primary beneficiaries of F2A visa petitions, and automatic conversion to F2A derivative beneficiaries. Like the Fifth Circuit, "[w]e are skeptical that this meager benefit was all Congress meant to accomplish through subsection (h)(3), especially where nothing in the statute singles out derivative beneficiaries of second-preference petitions for special treatment." *Khalid*, 655 F.3d at 374.

Additionally, 8 C.F.R. § 204.2(a)(4) explicitly requires that to qualify for priority date retention, the identity of the petitioner must remain the same, while the CSPA contains no such requirement. If Congress intended to limit automatic conversion to only subsequent petitions in which the petitioner remains the same, the regulations provided a clear example of the language it could have used. Congress's decision not to track the regulatory language further suggests that the CSPA is not merely a codification of regulatory practice. *See id.* at 374 n.9 (citing 8 C.F.R. § 204.2(a)(4)).

The parties and amici disagree about how our interpretation will affect different categories of visa petitioners and about which aliens most deserve the next available visas. The number of visas available is statutorily fixed and is far exceeded by demand. Accordingly, Congress's decision to allow aged-out beneficiaries to retain their priority dates when they join new preference category lines will necessarily impact the wait time for other aliens in the same line. It is difficult to assess the equities of this result, but that is not our role. We "are vested with the authority to interpret the law; we possess neither the expertise nor the prerogative to make policy judgments." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2579 (2012).

**[7]** The CSPA, "as a whole, clearly expresses Congress' intention," and we therefore do not defer to the BIA's interpretation of subsection (h)(3). *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 42 (1990); *see also Khalid*, 655 F.3d at 371 (the CSPA "as a whole, clearly expresses Congress' intention about the universe of petitions covered by (h)(3)," and "there is no room for the agency to impose its own answer to the question" (internal quotation marks omitted)). Automatic conversion and priority date retention are available to all visa petitions identified in subsection (h)(2). Because "the intent of Congress is clear, that is the end of the matter," *Chevron*, 467 U.S. at 842, and we do not consider past agency practice or legislative history. We join the Fifth Circuit in "giv[ing] effect to the unambiguously expressed intent of Congress." *Id.* at 843.

**[8]** The district court's grants of summary judgment are reversed and these cases are remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**.

M. SMITH, Circuit Judge, with whom KOZINSKI, Chief Judge, and McKEOWN, W. FLETCHER and RAWLINSON, Circuit Judges, join, dissenting:

The statutory provision at issue in this case, 8 U.S.C. § 1153(h), "is far from a model of clarity." *Robles-Tenorio v. Holder*, 444 F. App'x 646, 649 (4th Cir. 2011). The Second Circuit recently held that § 1153(h)(3) means the exact opposite of what the majority holds. *See Li v. Renaud*, 654 F.3d 376, 382-83 (2d Cir. 2011). Other courts, including the original three-judge panel in this case, concluded that § 1153(h)(3) is ambiguous, and that the Board of Immigration Appeals's (BIA) decision is entitled to deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See, e.g.*, *Cuellar de Osorio v. Mayorkas*, 656 F.3d 954, 965-66 (9th Cir. 2011), *vacated*, 677 F.3d 921 (9th Cir. 2012); *Zhong v. Novak*, No. 08-4597, 2010 WL 3302962, at *7-9 (D.N.J. Aug. 18, 2010); *Co v. U.S. Citizenship & Immigration Serv.*, No. CV 09-776-MO, 2010 WL 1742538, at *4 (D. Or. Apr. 23, 2010); *cf. Robles-Tenorio*, 444 F. App'x at 649 ("It is unclear whether the text and structure of (h)(1) and (h)(3) can be reconciled in any coherent or reasonable fashion."). If the meaning of § 1153(h)(3) were truly as clear and unmistakable as the majority holds, it certainly has eluded more than its share of reasonable jurists.[1]

---

[1] I do not state or imply that a circuit split is evidence that a statute is ambiguous, although the Supreme Court has stated that "contrasting positions of the respective parties and their *amici*" may demonstrate that a statute "do[es] embrace some ambiguities." *Dewsnup v. Timm*, 502 U.S. 410, 416 (1992); *see also Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735, 739 (1996) ("In light of the two dissents from the opinion of the Supreme Court of California, and in light of the opinion of the Supreme Court of New Jersey creating the conflict that has prompted us to take this case, it would be difficult indeed to contend that the word 'interest' in the National Bank Act is unambiguous with regard to the point at issue here.") (internal citations omitted).

Of course, "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which

I would hold that 8 U.S.C. § 1153(h)(3) is ambiguous because it contains language simultaneously including and excluding derivative beneficiaries of F3 and F4 visa petitions from the benefits of the Child Status Protection Act (the CSPA), 8 U.S.C. § 1153(h). Because Congress did not "speak[ ] with the precision necessary to say definitively whether [the statute] applies to" F3 and F4 derivative beneficiaries, I would proceed to *Chevron* step two. *Mayo Found. for Med. Educ. & Research v. United States*, 131 S. Ct. 704, 711 (2011) (first alteration added, second alteration in original, and citation omitted). At step two, I would defer to the BIA's interpretation of § 1153(h)(3) in *Matter of Wang*, 25 I. & N. Dec. 28 (2009). Because the majority holds otherwise, I respectfully dissent.

## I. *Chevron* Step One

At *Chevron* step one, "we ask whether the statute's plain terms 'directly addres[s] the precise question at issue.' " *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 986 (2005) (quoting *Chevron*, 467 U.S. at 843) (alteration in original). "If the statute is ambiguous on the point, we defer at step two to the agency's interpretation so long as the construction is 'a reasonable policy choice for the agency to make.' " *Id.* (quoting *Chevron*, 467 U.S. at 845).

---

that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). I merely point out the common sense proposition that if the intent of Congress were truly clear, it would be surprising that so many courts misread the statute. Nevertheless, it is worth noting that there is currently a circuit split over whether the existence of a circuit split is evidence of statutory ambiguity. *Compare Snell Island SNF LLC v. NLRB*, 568 F.3d 410, 419-20 (2d Cir. 2009) (evidence), *vacated on other grounds*, 130 S. Ct. 3498 (2010), *McCreary v. Offner*, 172 F.3d 76, 82-83 (D.C. Cir. 1999) (same), *and In re S. Star Foods, Inc.*, 144 F.3d 712, 715 (10th Cir. 1998) (same), *with Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1254 n.4 (11th Cir. 2003) (not evidence), *aff'd*, 545 U.S. 546 (2005), *and Rosmer v. Pfizer Inc.*, 263 F.3d 110, 118 (4th Cir. 2001) (same).

Thus, the relevant question at the first step of *Chevron* is whether "the intent of Congress is clear." *Chevron*, 467 U.S. at 842. Unless the statute's plain text "speak[s] with the precision necessary to say definitively whether [the statute] applies to" a particular class of individuals, the statute is ambiguous. *Mayo Found.*, 131 S. Ct. at 711 (alteration in original). Typically, such an ambiguity "lead[s] . . . inexorably to *Chevron* step two." *Id.*

Section 1153(h)(3) states: "If the age of an alien is determined under paragraph (1) to be 21 years of age or older for the purposes of subsections (a)(2)(A) and (d) of this section, the alien's petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition." 8 U.S.C. § 1153(h)(3). The crux of the appeal is whether F3 and F4 derivative beneficiaries are entitled to the benefits provided in this provision.

Many reasonable constructions of § 1153(h)(3) are possible. One could reasonably read § 1153(h)(3), as the majority does, to include F3 and F4 derivative beneficiaries because this provision references the age-calculation formula in § 1153(h)(1), which covers derivative beneficiaries of F3 and F4 petitions through § 1153(h)(2). But three limitations in § 1153(h)(3) complicate matters: (1) that a petition must be converted "to the appropriate category;" (2) that only "the alien's petition" may be converted; and (3) that the conversion process has to occur "automatically." *See* 8 U.S.C. § 1153(h)(3). By ignoring statutory language contrary to its interpretation before finding the plain meaning clear, the majority not only misconstrues its role at *Chevron* step one, but it also runs afoul of Supreme Court precedent controlling how courts are supposed to interpret statutes. *See Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 666 (2007) ("In making the threshold determination under *Chevron*, 'a reviewing court should not confine itself to examining a particular statutory provision in isolation.' ") (citation omit-

ted); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.' ") (citation omitted).

One could reasonably construe § 1153(h)(3) as excluding aged-out F3 and F4 derivative beneficiaries. This provision requires conversion "to the appropriate category." 8 U.S.C. § 1153(h)(3). Section 1153(a) identifies the only categories for which a family-preference petition may be filed: (1) "[u]nmarried sons and daughters of citizens; (2) "[s]pouses and unmarried sons and unmarried daughters of permanent resident aliens;" (3) "[m]arried sons and married daughters of citizens;" and (4) "[b]rothers and sisters of citizens." *Id.* § 1153(a)(1)-(4). The children eligible to enter as derivative beneficiaries of their parents' visa petitions are the grandchildren, nieces, and nephews of United States citizens. When those children turn 21 and are no longer eligible to enter with their parents, there is no section 1153(a) category into which they fit on their own. This led the Second Circuit to conclude that Congress did not intend to provide them the benefits of automatic conversion and retention of their original priority dates: "Because there is no family preference category for grandchildren of [lawful permanent residents], and Cen has not specified a category that would be appropriate, Cen cannot be converted to an 'appropriate category' *with respect to his grandfather's petition*. Therefore, Cen is not eligible under Section 1153(h)(3) to retain the 1994 priority date of his grandfather's petition." *Li*, 654 F.3d at 385 (emphasis added). We should do the same.

Second, § 1153(h)(3) requires "the alien's petition" to be automatically converted. 8 U.S.C. § 1153(h)(3). As the majority concedes, conversion of F3 and F4 derivative beneficiaries to the F2B category requires "a subsequent petition" and "a new petitioner" because "the identity of the petitioner changes from the beneficiary's grandparent or aunt or uncle to his par-

ent." *See id.* § 1153(a)(2)(B). But "a subsequent petition" is not the alien's original petition. Because the alien's original petition cannot be converted, as § 1153(h)(3) requires, and, instead, an entirely new petition must be filed, one could also reasonably conclude that Congress did not intend to cover F3 and F4 derivative beneficiaries in § 1153(h)(3).[2] *See Li*, 654 F.3d at 384 (implying that § 1153(h)(3) does not apply where "a different family-sponsored petition by a different petitioner" is required).

Third, § 1153(h)(3) mandates that the conversion process occur "automatically." 8 U.S.C. § 1153(h)(3). The majority correctly recognizes that "[w]hen the parents of aged-out derivative beneficiaries of F3 or F4 petitioners receive their visas and attain [lawful permanent resident] status, they can file F2B petitions naming their now-adult sons and daughters as primary beneficiaries." *See id.* § 1153(a)(2)(B). An action cannot be "automatic" if it depends on what a person *can* or *may* do, not what he or she definitely *will* do. A process is "automatic" if it is "self-acting or self-regulating," or occurs "without thought or conscious intention." *Webster's Third New International Dictionary* 148 (2002). As the original panel in this case concluded, "The phrase 'the alien's petition shall automatically be converted to the appropriate category,' 8 U.S.C. § 1153(h)(3), suggests that the *same* petition, filed by the *same* petitioner for the *same* beneficiary, converts to a new category. This understanding comports with the ordinary meaning of the word 'automatic,' which implies that the conversion should happen without any outside input, such as a new petitioner." *Cuellar de Osorio v. Mayorkas*, 656 F.3d 954, 962 (9th Cir. 2011), *withdrawn by* 677 F.3d 921, 921-22 (9th Cir. 2012).

---

[2]Contrary to the majority opinion, the statute does not "expressly recognize[ ] the possibility of automatic conversion of a subsequent petition." As the Second Circuit noted, "[e]ach time the Act uses the word 'conversion' it describes a change—*without need for an additional petition*—from one classification to another, not from one person's family-sponsored petition to another." *Li*, 654 F.3d at 384 (emphasis added).

The majority's reading of § 1153(h)(3) thus strains the ordinary meaning of the word "automatically," essentially reading this limitation on which petitions may be converted out of the statute. This is not a sound approach to statutory interpretation. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.") (citation omitted); *62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 340 U.S. 593, 596 (1951) ("Congress expresses its purpose by words. It is for us to ascertain—neither to add nor to subtract, neither to delete nor to distort.").

The majority recognizes the problem that an F2B petition requires an entirely new petition and petitioner, but it only considers this issue in the course of determining whether the statutory scheme set up by Congress is impracticable. In my view, the need to file a new petition does not go to whether the statutory scheme is impracticable and thus should be excepted from the plain meaning rule. It goes to whether the plain meaning of § 1153(h)(3) is ambiguous. The majority disregards the lack of any appropriate category to which derivative beneficiaries of F3 and F4 petitions can be converted before finding the plain language clear. In doing so, the majority overlooks highly relevant evidence from the overall statutory scheme that Congress did not intend for these individuals to receive the benefits identified in § 1153(h)(3). *See Brown & Williamson*, 529 U.S. at 132-33 (stating that "a reviewing court should not confine itself to examining a particular statutory provision in isolation" and should consider how statutory language fits into "the overall statutory scheme") (citation omitted). It forgets that "[i]n ascertaining the plain meaning of the statute, the court must look to . . . the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988).

Section 1153(h)(3) is also unclear about whether aged-out derivative beneficiaries are entitled to retain their original pri-

ority dates. Importantly, § 1153(h)(3) ties automatic conversion and retention of an original priority date together by specifying that an eligible alien's petition "shall automatically be converted to the appropriate category *and* the alien shall retain the original priority date issued upon receipt of the original petition." 8 U.S.C. § 1153(h)(3) (emphasis added). "[T]he Supreme Court has said that 'and' presumptively should be read in its 'ordinary' conjunctive sense unless the 'context' in which the term is used or 'other provisions of the statute' dictate a contrary interpretation." *OfficeMax, Inc. v. United States*, 428 F.3d 583, 589 (6th Cir. 2005) (listing cases); *see also Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1078 (2011) (noting that "linking independent ideas is the job of a coordinating junction like 'and' "). Nothing in the statute suggests that Congress meant for the word "and" to be read as "or." Since the word "and" ties the two benefits together, the ambiguity about the availability of automatic conversion to F3 and F4 derivative beneficiaries also renders the statute ambiguous as to whether such beneficiaries are entitled to retention of their original priority dates. *See Li*, 654 F.3d at 383-84 (rejecting the argument that the two benefits are distinct and independent).

Accordingly, I would hold that it is unclear whether Congress intended for aged-out F3 and F4 derivative beneficiaries to enjoy automatic conversion to a new category and retention of their priority dates. Section 1153(h)(3) appears to give contradictory answers to this question. Because this provision's plain terms do not yield a clear and consistent answer, I would proceed to *Chevron* step two.

## II.   *Chevron* **Step Two**

"The sole question for the Court at step two under the *Chevron* analysis is 'whether the agency's answer is based on a permissible construction of the statute.' " *Mayo Found.*, 131 S. Ct. at 712 (quoting *Chevron*, 467 U.S. at 843). "If a statute is ambiguous, and if the implementing agency's construction

is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." *Brand X*, 545 U.S. at 980. The BIA's interpretations of the INA are entitled to *Chevron* deference. *See Negusie v. Holder*, 555 U.S. 511, 517 (2009).

The BIA interpreted § 1153(h)(3) in *Matter of Wang*, 25 I. & N. Dec. at 33-39, holding that automatic conversion and priority date retention are not available where there is no category to which a beneficiary's petition can be converted, and a new petition would have to be filed by a new petitioner. *See id.* at 38-39; *see also id.* at 35 (explaining how "conversion" and "retention" have traditionally been interpreted). Thus, the BIA held that an aged-out derivative beneficiary of an F4 petition was not entitled to automatic conversion to a new category and retention of her original priority date when her father subsequently filed an F2 petition on her behalf. *See id.* at 38-39.

I would hold that the BIA's interpretation of § 1153(h)(3) is reasonable. As discussed above, there is no appropriate category to which derivative beneficiaries of F3 and F4 petitions may be converted if they age out because a petition may not be filed on behalf of a United States citizen's niece, nephew, or grandchild. No such family-preference categories exist. As the BIA recognized, there is "no clear indication in the statute that Congress intended to expand the historical categories eligible for automatic conversion and priority date retention . . . ." *Id.* at 36. The legislative history of the CSPA is also unclear about whether Congress intended for aged-out F3 and F4 derivative beneficiaries to receive the benefits of § 1153(h)(3). *See id.* at 36-38. Policy considerations also counsel deference to the BIA's interpretation of the statute. Congress caps the number of visas available to aliens in each preference category, and the demand for such visas far outstrips the supply. *See* 8 U.S.C. § 1151(c); *Matter of Wang*, 25 I. & N. Dec. at 38. Reading section 1153(h)(3) as the majority

does will not permit more aliens to enter the country or keep more families together, but will simply shuffle the order in which individual aliens get to immigrate. If F3 and F4 derivative beneficiaries can retain their parents' priority date, they will displace other aliens who themselves have endured lengthy waits for a visa. What's more, these derivative beneficiaries—who do not have one of the relationships in section 1153(a) that would independently qualify them for a visa—would bump aliens who *do* have such a qualifying relationship. As the BIA recognized, Congress could not have intended this zero-sum game. *See Matter of Wang*, 25 I. & N. at 36-38. I would defer to the agency's reasonable construction of the statute at *Chevron* step two. *See Brand X*, 545 U.S. at 980.

### III. Conclusion

I would hold that § 1153(h)(3) is ambiguous about whether aged-out F3 and F4 derivative beneficiaries are within its ambit, and that the BIA's conclusion that they are not is reasonable. I believe that the BIA's construction of this provision is entitled to deference. *See Mayo Found.*, 131 S. Ct. at 712; *Brand X*, 545 U.S. at 980. Accordingly, I would affirm the district court.

I respectfully dissent.